ARTHUR F. NEALE *vs.* AMERICAN ELECTRIC VEHICLE
COMPANY.

Suffolk.   January 15, 1904. — June 27, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Evidence*, Extrinsic affecting writings.

In an action for alleged breach of a contract in writing to employ the plaintiff as exclusive agent in a certain territory to sell " certain kinds of electric vehicles " manufactured by the defendant, it appeared that the plaintiff was to have a certain commission on vehicles and parts of vehicles sold by the defendant on orders procured by the plaintiff and that the defendant never sold anything on orders procured by the plaintiff.  The plaintiff offered to prove that the " certain kinds of electric vehicles " mentioned in the contract were understood and agreed by the parties to be machines described in certain catalogues and circulars as of a certain speed and capacity.  The judge excluded the evidence and ordered a verdict for the defendant.  *Held*, that the exclusion was right, there being no ambiguity in the contract which did not contain the warranty sought to be imported into it by oral evidence.

CONTRACT for alleged breach of a contract in writing to employ the plaintiff as exclusive agent in a certain territory to sell

"certain kinds of electric vehicles" manufactured by the defendant.. Writ dated January 1, 1902.

At the trial in the Superior Court before *Aiken*, J., without a jury, the plaintiff testified in his own behalf that he had had some years' experience as a salesman of electric vehicles, and that, before the date of the contract in writing, he had been employed by the defendant as a salesman, introducing and selling its vehicles. The plaintiff sought to introduce oral testimony as to the meaning in the contract of the words "certain kinds of electric vehicles," but upon objection of the defendant such oral testimony was excluded. Thereupon the plaintiff made the following offer of proof: "That the certain kinds of vehicles mentioned in the contract between the parties was understood and agreed between them to mean and include motor vehicles used for business and pleasure, propelled by means of electricity and electrical batteries, motors and mechanism, with the speed, capacity and desirability, and at the prices described and set forth in catalogues and printed circulars and price lists furnished by the defendant to the plaintiff to be used by him in pushing the sale of their goods."

The judge excluded the evidence stated in the foregoing offer of proof, and also excluded other evidence offered by the plaintiff to show that on account of defects and imperfections a certain company refused to buy an electric delivery wagon sent by the defendant upon an order procured by the plaintiff.

The judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The contract declared on was as follows:

"Memorandum of agreement made this thirty first day of December A. D. 1900, between the American Electric Vehicle Company, a corporation organized under the laws of the State of New Jersey, hereinafter called 'the Company,' party of the first part, and A. F. Neale, of Boston, in the State of Massachusetts, party of the second part.

"Whereas, The Company is the manufacturer of certain kinds of electric vehicles, and

"Whereas, The party of the second part is desirous of securing the exclusive agency for the sale, in the following territory namely all of Massachusetts east of a straight line drawn at

right angles to southern boundary of Massachusetts and passing through Springfield, Mass. of electric vehicles so manufactured by the Company.

"Now, therefore, in consideration of the premises and of the sum of One Dollar to each of the parties in hand paid by the other, and of other good and valuable considerations, and of the mutual covenants and agreements herein contained, it is hereby mutually agreed by and between the parties hereto as follows:

"First: That, until this agreement shall be terminated, the party of the second part shall have the sole and exclusive right to sell, in the territory aforesaid, namely, all of Massachusetts east of a straight line drawn at right angles to southern boundary of Massachusetts and passing through Springfield, Mass., all electric vehicles or parts or equipments thereof or accessories thereto, manufactured by the Company.

"Second: That the party of the second part shall faithfully and vigorously apply himself, during the continuance of this agreement, to the business of selling, within the territory aforesaid vehicles, parts, equipments or accessories thereof manufactured by the Company, and that the party of the second part will not, during such period, engage, directly or indirectly, in the sale, within said territory or elsewhere, of any vehicles, parts or equipments of any kind other than those manufactured by the Company.

"Third: That the party of the second part shall bear all expenses in any way connected with the agency or business to be undertaken by him, hereunder, whether such expenses shall arise in connection with the selling or handling of the Company's vehicles in the territory or otherwise, except in such cases as where the Company may place any of the vehicles on trial in said territory for the purpose of demonstration, which will not be under control of the party of the second part, in which case, it is understood and agreed that the party of the second part shall not be held liable for any expense arising therefrom.

"Fourth: That the party of the second part shall not sell or take orders for the Company's vehicles at lower prices than list prices at the time such orders are taken and accepted, as here-

inafter provided, except upon the specific authorization of the Company, which list or other prices the Company will furnish to the party of the second part upon reasonable request therefor, and any change in said list prices shall be immediately communicated to party of the second part.

"Fifth: All orders taken or sales made for or of the Company's vehicles, by the party of the second part, shall be taken and made subject to the acceptance and approval thereof by the Company, and notwithstanding anything hereinbefore contained, the party of the second part shall have no power to bind the Company to any orders taken or sales made until the same have been accepted and approved by the Company.

"The Company, however agrees to accept all orders of vehicles or parts thereof, or accessories thereto, so far as it, the Company, shall be liable to execute the same, provided the parties placing such orders are satisfactory to the Company in every way; viz, financially responsible of good repute and *bona fide* purchasers.

"Sixth: That the party of the second part shall receive, as full compensation for any and all services to be performed by him hereunder a commission of twenty per cent (20%) of the purchase price of each of the Company's vehicles sold by the Company on orders secured by the party hereto of the second part hereunder and accepted by the Company from purchasers resident in the territory assigned unto the said party of the second part, in paragraph, 1, of this contract, and such compensation to be computed, as aforesaid, on the purchase price of such vehicle or part or equipment thereof so sold.

"Seventh: That this discount, commission or reduction of 20% shall be paid by the said Company to said party of the second part immediately upon receipt of the purchase price by said Company for any vehicle part or equipment thereof, that is to say, twenty per cent (20%) of all or any payments, whether in whole or in part of the full purchase price, shall be immediately paid to said party of the second part, or the said party of the second part, may, at his option, remit to said Company eighty per cent (80%) of the purchase price of any said Company's products as payment in full for same.

"Eighth: It is also agreed that said Company shall supply to

said party of the second part a reasonable amount of catalogues, to be used in pushing Company's business in above territory, which catalogues shall be furnished by said Company free of expense to said party of the second part.

" Ninth : This agreement shall continue for the period of one year from this date, provided that the party of the second part shall, during said year, have sold vehicles to the value of fifteen thousand ($15,000) dollars, manufactured by the party of the first part, and shall have performed all the terms and conditions hereunder mentioned, then the said party of the second part, shall have the option of · continuing this agreement for another year on the same terms, and provided further, that during said second year said party of the second part shall have sold at least thirty thousand ($30,000) dollars' worth of said goods, and in like manner, shall have kept and performed all aforesaid terms and conditions, then the party of the second part, shall have the option of continuing this agreement for a third year.

" In witness whereof the party of the first part has caused its corporate seal to be hereunto affixed and these presents to be signed by its Vice-President and the party of the second part has set his· hand and seal, the day and year above written.

"American Electric Vehicle Co.<br>" By Geo. T. Risley<br>" Vice-President.

" Signed, sealed and delivered
     in presence of ;
" Louise B. Faisant
     " A. F. Neale"

*A. A. Hayden,* for the plaintiff.

*G. R. Nutter,* for the defendant.

LATHROP, J.   It seems to us very plain that the statement in the first " Whereas " of the contract that the defendant was the manufacturer " of certain kinds of electric vehicles " must be taken in connection with the second and third clauses of the contract, by the terms of which the defendant was to have the exclusive right to sell, within a certain territory, " all electric vehicles or parts or equipments thereof or accessories thereto, manufactured by the " defendant, and was to confine himself to the business of selling, within the territory named, " vehicles,

parts, equipments or accessories thereof manufactured by the" defendant.

So construed, the ruling of the judge of the Superior Court excluding the offer of proof was right. There is no ambiguity as to the subject matter of the contract. By the sixth article of the contract the plaintiff was to receive "as full compensation for any and all services to be performed by him" a commission of twenty per cent of the purchase price of each of the defendant's vehicles or parts or equipment thereof sold by the defendant on orders secured by the plaintiff. It does not appear that the defendant sold anything upon orders procured by the plaintiff.

The purpose of the offer of proof was to introduce into the contract a warranty that its machines should possess certain qualities of speed; capacity and desirability. There is no warranty to be found in the contract, and a warranty cannot be imported into a contract by parol evidence. *Lamb* v. *Crafts*, 12 Met. 353. *Frost* v. *Blanchard*, 97 Mass. 155, 157. *Kinnard Co.* v. *Cutter Tower Co.* 159 Mass. 391.

*Exceptions overruled.*